## George Riner's Appeal.

---

### Jacob B. Miller's Estate.

Liens, the extent or amount of which cannot be rendered certain, are not devested by a judicial sale.

It is competent, however, for the parties interested to agree that such a lien shall be discharged by the sale; and this, although there be no formal or written agreement or mention of it in in the conditions of sale.

Where an executor has sold his decedent's real estate under an authority given in the will, and has agreed that the sale shall discharge a lien that would otherwise not have been discharged thereby, and his vendee pays part of the purchase money, goes into possession and makes valuable improvements on the property, a court of equity will not rescind the sale even though the owner of the lien denies that it was discharged by the sale, and avers that the executor's agreement that it should be discharged was in excess of his authority.

It seems that an executor has the power to make such an agreement; but even if he has not, the only persons that could be injured thereby are the distributees of the estate, whose remedy, if they have any, is an action against the executor.

(Argued February 13, 1888. Decided March 5, 1888.)

---

NOTE.—Where land is sold by an executor by reason of an individual agreement made by him to induce the purchase, he is liable for loss resulting from a failure to comply with his contract. Kauffelt v. Leber, 9 Watts & S. 93. But to uphold the liability of the promisor, some consideration for the promise must appear. Robb v. Mann, 11 Pa. 300, 51 Am. Dec. 551. An executor may agree to sell the decedent's real estate free from encumbrances, or from a portion thereof, and if the property brings enough to pay the encumbrances, and no one objects, the orphans' court, as a court of equity, may decline to enforce the strict legal rule as to the discharge of liens, to the prejudice of an innocent purchaser, or of an executor who has erroneously but honestly settled with the purchaser on the basis of his bid for a clear title. Crosson's Appeal, 125 Pa. 380, 17 Atl. 423, as explained in Kreamer v. Fleming, 191 Pa. 534, 43 Atl. 388; Darrah's Estate, 6 Pa. Dist. R. 178, 19 Pa. Co. Ct. 287.

July Term, 1886, No. 22, E. D., before GORDON, Ch. J., PAXSON, STERRETT, CLARK, and WILLIAMS, JJ. Appeal of George Riner from a decree of the Orphans' Court of Schuylkill County overruling the exceptions and confirming the report of the auditor appointed to audit and distribute the proceeds of the sale of the real estate of Jacob B. Miller, deceased, in the hands of his executor. Affirmed.

The report of the auditor, John W. Roseberry, Esq., was substantially as follows:

Jacob B. Miller, the testator, died on the 21st day of May, 1882, having made his last will in writing dated the 27th day of February, 1875, duly proved May 26, 1882, whereby he bequeaths to his wife, Margaret, $600, either in money or personal property, at her election, and if she elected to take personal property for the whole or any part, it should be appraised to her by three appraisers chosen by the executor. He further declared that his wife should have her lawful dower in all his real estate but the before-mentioned bequests should be in lieu of the $300 allowed by law to widows of decedents, and as touching the rest and residue of his estate he gave and bequeathed the same to his wife and each of his children or their heirs, share and share alike, after first paying the bequests before named in his will.

There were other bequests which it is not material to notice. He further directed his executor to sell his real estate at public sale within one year after the probate of his will, and of his said will he appointed Levi Fehler the executor.

Letters testamentary were granted on his estate to Levi Fehler May 26, 1882.

Pursuant to the direction of the will the executor exposed to public sale, October 21, 1882, the real estate of the testator, consisting of a farm, situated in Porter township, containing 112 acres, or thereabouts. The property was struck down to George Riner for $3,000, he being the highest bidder. Some of the devisees present complained that it brought too little, and at the request of George Riner the property was again put up and, no higher bid being offered, was again struck down to George Riner for the same amount. Fehler had agreed to take the check of Riner for the down money of 10 per cent in case he became the purchaser. After the property was struck off to Riner the executor refused to take the check, and refused to permit him to

sign the conditions of the sale, stating that he wanted to see his lawyer first. No notices were given or read at the sale.

Riner presented his petition to the court in equity, for a specific performance of the above alleged contract of sale on the part of the executor.

The court refused to make a decree.

The property was again offered at public sale on the 1st day of December, 1882, and struck down to Smith Martin for the sum of $3,650, he being the highest bidder. The purchaser paid the down money of 10 per cent and signed the conditions of sale. Two notices were produced in evidence which were read at the sale, one of them signed by Joseph W. Moyer, Esq., attorney for George Riner, notifying bidders that the property would be sold subject to a judgment entered to No. 526, June term, 1878, for $500, in favor of George Riner and against Jacob B. Miller (the testator), and that such judgment was now and would remain a perpetual lien on said real estate.

The other notice was signed by George Riner and notified bidders that he claimed to be the true and legal owner of the farm offered for sale; that he purchased the same at the public sale held on October 21, 1882, and that he intended to assert his title to the farm against the executor and against any person who may purchase or claim the same; and that he had now pending a suit in equity against Levi Fehler, executor, to compel him to execute to him a deed for the farm. After these notices were read there was some talk about the subject-matter of the notices. Fehler and the auctioneer did not appear to regard them as being of much consequence. Smith Martin, however, inquired of the executor whether he could give him a clear title if he became the purchaser, stating that he did not desire any difficulty or lawsuit with George Riner. In reply Fehler declared that he would give him a clear deed or he would pay the money back. The bidding then proceeded, the only persons bidding being those in behalf of Riner and Smith Martin. The property was struck off to Martin at the sum of $3,650, he being the highest bidder.

In the same evening the parties went to the house of William Heckler, when Smith Martin again asked Fehler whether he would give him a clear title. Fehler reiterated that he would give him a clear title or he would pay the money back. Martin then signed the conditions of sale and paid the down money.

The conditions required the payment of the balance of the purchase money on the first day of April next ensuing. On the Saturday before the first of April (that day falling on Sunday), and several times afterwards, the purchaser called on Fehler and said he was prepared to pay the balance of the purchase money and wanted a clear deed. Fehler replied that he could not give him a clear title. He was not prepared to do so on account of the lawsuit of Riner about the judgment of indemnity, but he should wait until matters were decided, then he would be able to give a clear deed. Previously, on January 22, Smith Martin entered into articles of agreement with James Drum, the tenant in possession under the decedent, by which he was permitted to cut timber from the farm, have the use of one stable, and to make such repairs as he desired. Under this agreement Smith Martin cut off a good deal of the smaller timber, and from that time, before and after the first day of April, made many improvements on the farm and buildings which he testifies cost him $1,000. Heckler testified that the farm is worth twice as much as when Martin bought it owing to the improvements made upon it and the fertilizing put upon it by Martin.

On April 2. (Monday) Martin called upon Fehler to give him full possession of the farm. The latter went with him for that purpose, but when they reached the house, they found that Drum the tenant had moved out. Fehler then left and Martin entered into the possession and has remained in possession since.

I may remark here that the widow's dower of one third of the purchase money by the conditions of sale was to remain a lien on the farm.

The judgment bond of indemnity which was the subject of one of the notices read at the sale was given under the following circumstances:

The decedent was the owner of the land described in the indemnity judgment, and by articles of agreement between himself and his son Daniel dated the 10th of August, 1867, agreed to sell and convey the same to his son Daniel at the price of $10 per acre, $5 to be paid down—interest on the balance of the purchase money to be paid annually until the death of said Jacob Miller, when a deed prepared and executed by said Miller and wife should be delivered to his son Daniel, the purchase money to be deducted from his share or portion of his said father's estate.

Daniel was at the time of the agreement in possession of the land. He paid the $5 and remained in possession for a time and apparently abandoned it. To use the expression of George Riner, "it was commons." Jacob B. Miller and wife then, by deed dated March 28, 1868, conveyed the same land to the children and heirs of his son Daniel (without naming them). Recorded in Deed Book 104, p. 267. The same land was assessed in the name of Daniel Miller, and on the 8th day of June was sold at treasurer's sale to Levi Fehler in two separate parcels, who received a treasury deed therefor. Fehler and wife by deed dater March 2, 1875, for the consideration of $59.60 conveyed the same to Jacob B. Miller (the testator). George Riner proposed to purchase the premises if Miller would give him a good title. The agreement resulted in a deed from Jacob Miller and wife to George Riner, for the consideration of $700, dated April 27, 1877, and at the same time, the judgment bond of said Jacob Miller to said Riner in the sum of $500, conditioned to indemnify him against the title of the children or wife of Daniel Miller. Riner took possession of the land and cut timber from it, but has not been disturbed in his possession from any source.

After testator's death George Riner procured assignments from a number of testator's children of their shares in his estate, and thereby became entitled to two thirds of the testator's estate.

The executor filed his account on the 4th of February, 1884, in which he charges himself among other items with the inventories of personal property, and the down money of $365 received from Smith Martin, and claiming a credit among other items of $150 on account of his expenses, services and commissions, leaving a balance for distribution of $409.37.

George Riner excepted to the account because: (1) The accountant has not charged himself with the whole proceeds of the sale of the real estate, claiming: that the indemnity judgment being a fixed lien is not discharged by the sale; that the executor had no right or power to agree to give a clear title, or in other words to impose terms other than the law prescribes; that it was the duty of the purchaser to know the law, and finding that the lien remained he should have rescinded the contract; that not having done so, and having signed the written conditions of sale, he is bound to pay the whole of the purchase money, less the dower, subject to the lien of the judgment, and

seek redress by suit against the executor; that the parol agreement and understanding at the time of the sale, being in contravention of the written contract or conditions of sale, is void; that if, however, the parol agreement should be held to be binding as between the executor and the purchaser, the legatees having suffered loss thereby, the executor should nevertheless be charged with the whole amount.

Upon the above facts the auditor reported the following as his conclusion of law:

It is well established by numerous decisions, among them Moore v. Shultz, 13 Pa. 98, 53 Am. Dec. 446; Luce v. Snively, 4 Watts, 396, 28 Am. Dec. 725; and Rutty's Appeal, 84 Pa. 61, that liens, the extent or amount of which cannot be rendered certain, are not devested, because they could not be paid out of the money produced by the sale. It is a fixed lien on the land. Dewart's Appeal, 43 Pa. 326.

This judgment is a lien of that character and could not be devested by the sale, but remains a fixed lien until such time as Riner shall be secure in his title as against the title of the heirs or children of Daniel Miller. The present difficulty would have been avoided, had the executor consulted his counsel previous to the sale in reference to the status of the lien; but in defiance of the notice given at the sale, and upon his own responsibility, he heedlessly promised and assured the purchaser that he would give him a clear title, or pay back the money. Relying upon these promises and assurances, Smith Martin became the purchaser, and has declared his readiness to pay the purchase money (less the dower) at any time, provided the judgment is taken from the docket, or pay the amount less the judgment. The conditions of sale and the parol agreement may well stand together, as the contract of sale between the executor and purchaser. The one is consistent with the other. The parol agreement does not alter or vary the written conditions of sale.

In Shultze v. Diehl, 2 Penr. & W. 276, the court says: The parties to a contract of sale are bound according to the contract as understood between them, and where all understand the contract in the same way. I know of no case in which a party is subject to any conditions or liable to any burden not contemplated by them. The rule is well settled that where at the time of the sale, the seller or any person interested, represents the title

to be in a certain way, and it turns out not to be so, yet as against the person making the representation, it shall be as represented.

It is competent for the parties interested to agree that a lien shall be discharged by a sale, or that it shall remain, which would not otherwise have such effect though there be no formal or written agreement or no mention of it in the conditions of sale. Franklin v. Mackey, 9 Lanc. Bar. 197; Frailey's Estate, cited in 3 Brightly's Digest, 3283, 3284; Ashmead v. McCarthur, 67 Pa. 326; Loomis's Appeal, 22 Pa. 312, Stackpole v. Glassford, 16 Serg. & R. 163.

The purchaser, therefore, has a right to claim a title clear of encumbrances according to the contract.

It is claimed that when Martin discovered that he could obtain no clear title he should have rescinded the contract. The auditor is of the opinion that he did all that a prudent man was required to do. He several times informed Fehler that he was prepared to pay the money and complete the purchase according to the agreement; but was answered that he should wait, that he (Fehler) expected to make such arrangements with Riner as would enable him to give him a clear title. Under these circumstances, relying upon Fehler's declarations and assurances, he expended about $1,000 in repairs and improvements, cut off timber and obtained possession of the premises with the consent of Fehler. The contract has been so far executed by the payment of part of the purchase money, obtaining possession in pursuance of the contract, and making valuable improvements, that it would be against equity and good conscience to adjudge a rescission of the contract. The parties cannot be placed in the same position they were before the improvements were made. Nor has the executor ever offered to pay back the money paid on the contract.

Another position taken by the exceptor is that the executor having exceeded his authority he is responsible to the legatees, and hence should be charged with the whole purchase money.

The principle is laid down in Kauffelt v. Leber, 9 Watts & S. 93, and in other cases cited by the counsel, that persons acting in a fiduciary character bind themselves personally by an express or voluntary covenant collateral to their official acts, or where either from inadvertence or design, they enter into covenants of greater scope than the law exacts of them, but that

no personal liability results out of the necessary acts which they are appointed to perform in execution of the trust.

The cases cited are all cases where the purchaser seeks to hold either the trustee or the *cestui que trust* liable upon the covenants of the trustee and do not apply to the present case.   They decide that where the purchaser has sustained damage by the breach of covenant made with the trustee, the *cestuis que trust* are liable if he acted within the scope of his authority, but he binds himself by a covenant collateral to his trust.

Here the purchaser makes no complaint, seeks no redress for breach of covenants.   If any are injured, it is the distributees.

The auditor fails to see that the executor exceeded the powers given to him, or entered into covenants of greater scope than the law exacts of him.   Under ordinary circumstances it would have been his duty to sell clear of encumbrances.   A purchaser would not likely buy with encumbrances.   At most it was an error of judgment on the part of the executor.   He doubtless supposed he could arrange it with Riner to have the judgment canceled. An inference may be drawn from Riner seeking the aid of a court of equity to enable him to get the farm for $3,000, and giving notice to bidders that he had a good title to the farm, had a suit pending in court and intended to assert his title against the purchaser, that he was not disposed to listen to any proposition short of a rescission of the contract with Martin.

If, however, the distributees conclude that they have a cause of action, the appropriate remedy would be a suit against the executor.   For the auditor to decide the question would be collateral to the duty imposed upon him, prolong litigation, and retard the settlement of the estate.

The auditor therefore concludes to charge the accountant with the balance of the purchase money, less the dower, and the amount of the judgment, and recommends Smith Martin to pay into the orphans' court the sum of $500, the amount of the judgment agreeably to § 19 of the act of February 24, 1834, 1 Purdons' Digest, 431, to abide the condition of the judgment.

To this report Riner filed the following exceptions:

1. The auditor erred in holding that the executor could bind the estate by his parol agreement with Smith Martin, the purchaser, at a public sale to give a clear title.   Such agreements are outside the authority of the executor, and the purchaser was

bound to know that fact; and after purchasing, after full notice of the lien of Riner's judgment, he was bound to pay his full bid, and take the land subject to the lien of the judgment.

2. The auditor erred in holding that the agreement was so far executed by the purchaser entering into possession and making improvements, that it would be against equity to rescind the contract for the reasons: (a) that the purchaser made the purchase with full knowledge and knew and was bound to know that the executor had no right to stipulate for any other title than the executor could give under his powers; (b) that equity refuses to rescind only where the damages cannot be ascertained. Here the purchaser has testified to all the expenditures he has made; and hence the rule in equity cited by the auditor does not apply; (c) the parol agreement was that the executor would give a clear title or pay back the purchase money. Under such an agreement, if the executor could not make the title according to the contract, the remedy agreed upon by the parties was to rescind the contract; and the purchaser is entitled to no other remedy. If he made improvements he did so at his own risk; (d) that the executor had no power to stipulate for any other title than that which the testator could convey, and all such stipulations outside of his powers are void as to the estate.

3. The auditor erred in holding that the $500 judgment, George Riner v. Jacob B. Miller, should be discharged and that sum paid into court.

The court has no jurisdiction to so decree and no power to discharge the lien of the judgment. And it is not equity to George Riner, as he is entitled to a large distributive share of the fund and would result in his paying the indemnity to himself and thus defeat the objects sought by the parties.

Upon these exceptions the court rendered the following decree:

"And now, April 6, 1885, the exceptions to the auditor's report are overruled, and the report is confirmed, the court making no order at present to pay the judgment of $500, held by George Riner as security, into the orphans' court, as recommended by the auditor."

The assignments of error specified: (1-3) The action of the court in overruling the exceptions to the auditor's report; and (4) the decree entered thereupon.

*J. W. Moyer* and *James Ryon,* for appellant.—The agreement of the executor was in excess of his powers, and not binding on the estate. Kauffelt v. Leber, 9 Watts & S. 93; Shontz v. Brown, 27 Pa. 134; Guillou v. Peterson, 89 Pa. 170; Bohlen's Estate, 75 Pa. 304; Hollenback v. Clapp, 103 Pa. 65.

This agreement was binding on the executor himself. Sumner v. Williams, 8 Mass. 162, 5 Am. Dec. 83; Rawle, Covenants for Title, 418, 423; Duvall v. Craig, 2 Wheat. 56, 4 L. ed. 183; Stinchfield v. Little, 1 Me. 231, 10 Am. Dec. 65; Mitchell v. Hazen, 4 Conn. 495, 10 Am. Dec. 169; Belden v. Seymour, 8 Conn. 24; Whiting v. Dewey, 15 Pick. 433; Godley v. Taylor, 14 N. C. (3 Dev. L.) 178; Donahue v. Emery, 9 Met. 66.

The reasons given in the second exception to the auditor's report are supported by the following cases: (a) Martin's Appeal, 13 W. N. C. 167; Leonard's Appeal, 94 Pa. 168.

(b) Moore v. Small, 19 Pa. 461; M'Kee v. Phillips, 9 Watts, 86; Parker v. Wells, 6 Whart. 161; Gangwer v. Fry, 17 Pa. 495, 55 Am. Dec. 578; Bender v. Bender, 37 Pa. 419; 2 Story, Eq. § 760; Bright. Eq. §§ 227, 228.

(c) Westerman v. Means, 12 Pa. 97; Faunce v. Burke, 16 Pa. 469, 55 Am. Dec. 519; Streeper v. Williams, 48 Pa. 450; Schreve v. Brereton, 51 Pa. 175; Powell v. Burroughs, 54 Pa. 329; Wolf Creek Diamond Coal Co. v. Schultz, 71 Pa. 180.

(d) See authorities cited as to power and liability of executor. Schug's Appeal, 14 W. N. C. 49; De Haven's Appeal, 16 W. N. C. 38.

The bond given by decedent cannot be devested by the orphans' court sale, or by the payment of the money into court. Armstrong's Appeal, 68 Pa. 412; Moore v. Shultz, 13 Pa. 98, 53 Am. Dec. 446; Luce v. Snively, 4 Watts, 396, 28 Am. Dec. 725; Rutty's Appeal, 84 Pa. 61; Dewart's Appeal, 43 Pa. 326.

*D. C. Henning* for appellee.

PER CURIAM:

The auditor's report in this case so obviously accords with the principles of equity which should govern the contention in hand that we cannot but concur in the decree affirming it.

The appeal is dismissed and the decree is affirmed, at costs of appellant.